# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

REBECCA LYNN McBRIDE, )
 )
    Plaintiff, )
 )
v. )
 ) CV416-220
NANCY A. BERRYHILL,[1] )
Acting Commissioner of )
Social Security, )
 )
    Defendant. )

## **REPORT AND RECOMMENDATION**

Plaintiff Rebecca Lynn McBride seeks judicial review of the Social Security Administration's denial of her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits.

## I. GOVERNING STANDARDS

In social security cases, courts

. . . review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security, and has been substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ applies

> . . . a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id*. § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id*. § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id*. § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id*. § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC[2] to perform her past relevant work. *Id*. § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the

---

[2] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id*. (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

claimant's RFC, age, education, and work experience. An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a [Vocational Expert (VE)].

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir. 2015) (footnote added).

## II. ANALYSIS

McBride, who was 59 years old when her DIB and SSI claims were denied, alleges disability beginning June 1, 2011. Tr. 211. She can read and write in English, has a 12th grade education, and has past work experience as a teacher's aide I and II. Tr. 58, 271, 273-74. After a hearing, the ALJ issued an unfavorable decision. Tr. 1-4, 10-23. He found that McBride's fibromyalgia, arthritis, vertigo, blurred vision, non-narcolepsy sleep disorder, and depressive disorder constituted severe impairments but did not meet or medically equal a Listing. Tr. 12-14. Based on the evidence of record, the ALJ found that she retained the RFC for medium work,[3] except that she

> . . . can only frequently balance, crawl, kneel and stoop. [She] can occasionally climb ramps and stairs, but can never climb ladders, ropes or scaffolds. [She] must avoid work around

---

[3] Medium work is defined as work that involves lifting no more than 50 pounds at a time, with frequent lifting or carrying objects that weigh 25 pounds. 20 C.F.R. § 404.1567(c).

3

hazardous machinery, unprotected heights and extreme heat/humidity. [She] is limited to performing simple or detailed work (i.e. no complex work) but should do no work providing easy access to alcohol/illegal drugs (especially cocaine and marijuana) due to a remote history of alcohol/cocaine/marijuana abuse.

Tr. 14.

Plaintiff, he determined, was capable of performing her past work as a teacher's aide I and II as well as alternative work as an amusement park worker, usher, and school bus monitor, all light work[4] with an with an SVP[5] of 2. Tr. 21-23. Hence, McBride was not disabled. Tr. 23. She disagrees, arguing that the ALJ failed to properly weigh the opinion evidence regarding her mental functioning. Doc. 18.

### A. RFC Assessment

Based on the creditable evidence of record, the ALJ concluded that McBride retained the RFC to perform medium work with postural, environmental, and mental limitations. Tr. 14. ALJs are entitled to formulate an RFC and resolve any ambiguity or inconsistency in the

---

[4] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b).

[5] Specific Vocational Preparation (SVP) is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, App. C.

4

medical evidence, 20 C.F.R. §§ 416.927(d)(2), 946(c), based on the entire record, *id.* at §§ 404.1520(e) (ALJs "assess and make a finding about [the RFC] based on all the relevant medical and other evidence"), 416.945(a)(3) (the RFC is based on all the relevant evidence, including diagnoses, treatment, observations, and opinions of medical sources, as well as witness testimony). Here, the ALJ adequately accommodated plaintiff's physical and mental functional impairments in a single, comprehensive RFC assessment.

1. **Dr. Roth**

Plaintiff contends that the ALJ erred by failing to include consultative psychological examiner Dr. Kristiansson Roth's opined mental functioning limitations in the RFC assessment. *Id.*

At her examination with Dr. Roth, plaintiff reported "migraines, chronic pain and depression with memory issues and confusion" as well as "not being able to work due to staying in bed three days out of the week on average" due to pain. Tr. 504 & 506. Though she completed high school with above average grades, she complained of trouble with mathematics in school and reported continued struggles to "stay on task and focus on the task." *Id.* at 505. She has difficulty concentrating long enough to

perform simple tasks but can "follow conversations and movies longer than one hour." *Id.* at 506 (reporting "trouble concentrating and thinking," even on "simple" tasks). She had been married three times, has three adult children and two living siblings, and is the primary caretaker for her elderly parents. *Id.* She reports a history of drug and alcohol abuse and multiple hospitalizations for "emotional problems," but since receiving mental health treatment and taking medication "is no longer suicidal and her mood has lifted." *Id.* (reporting "medication and treatment is helpful and [she] sees improvement"); *see also id.* at 508 (denying suicidal thought or ideation).

Plaintiff was well oriented, alert, and cooperative, demonstrating good eye contact, logical and goal-oriented thought processing, and intermittently diminished concentration with a depressed mood. Tr. at 508. She appeared mildly anxious with the examination process, *id.* (reporting she "is not usually anxious"), and her IQ testing "underestimate[d]" her "potential" due to "a suppression of effort, her depressed mood and alleged pain and discomfort." *Id.* at 509. She did not, however, appear to have "exaggerate[d], promote[d], or embellish[ed] her symptomatology." *Id.* (noting she "showed good effort and variable

6

task persistence with diminished concentration due to her pain and discomfort," so that over time her pace declined commensurate with her fatigue).

McBride also told Dr. Roth she requires prompting and reminders to "structure and execute her day," regularly sleeps in and stays up late, sleeps for 4-5 hour intervals without interruption for a total average of 10 hours a night, and is independent in her activities of daily living (ADLs) (*i.e.*, self-care, cooking, chores, tracking her medications, driving, etc.). Tr. 507. She interacts with her extended family daily, cares for her grandchildren as needed, attends church and visits with friends regularly, and has hobbies. *Id.* Based on her "portrayal of her ADLs," Dr. Roth opined McBride was able "to understand, remember and carry out simple directions with adequate concentration and pace" and "get[ ] along fairly well with others." *Id.*

Dr. Roth concluded that plaintiff had no "significant limitations" in understanding and remembering, or carrying out simple and detailed instructions; moderate problems with sustaining attention and mild problems with sustaining pace; no difficulties adapting to normal work stressors; and a "variably fair" ability to interact with supervisors,

7

coworkers, and the general public. *Id.* at 510. Despite assigning Dr. Roth's opinion "significant weight," *id.* at 20, plaintiff argues that the ALJ failed to fully accommodate these restrictions into his RFC assessment. Doc. 18 at 8.

As an initial matter, there is no requirement for an ALJ to incorporate every single physician-endorsed limitation into the RFC -- the ALJ alone synthesizes the (creditable) objective medical evidence, the medical opinion evidence, *and* the testimonial evidence into a single, comprehensive RFC assessment. 20 C.F.R. § 404.1520(e) (ALJs "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence"); *see also id.* at §§ 404.1513, 404.1527, 404.1545, 416.927(d)(2), 946(c), 945(a)(3); *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923-24 (11th Cir. 2007) (no error in formulating RFC that conflicted with a physician's RFC assessment and which, while supported by other evidence in the record, was not supported by another physician's RFC assessment); *Langley v. Astrue*, 777 F. Supp. 2d 1250, 1258 (N.D. Ala. 2011) ("[T]he law of this Circuit does not require[ ] an RFC from a physician."). Further, the ALJ's RFC assessment *did* fully incorporate Dr. Roth's opinion of plaintiff's mental

8

functioning.

The ALJ built in mental functioning limitations on plaintiff's ability to work: she is limited to "performing simple or detailed work (i.e., no complex work)." Tr. 14. McBride contends that this is somehow inconsistent with Dr. Roth's opinion that she has moderate limitations sustaining attention, mild limitations sustaining pace, and struggles with persistence/fatigue (doc. 18 at 8; *see* tr. 509-10) and the ALJ's own finding that she suffered mild-to-moderate difficulties with concentration, persistence, and pace (CPP)[6] (doc. 18 at 9; *see* tr. 13). But she does not demonstrate *how* a limitation to simple or detailed work is inconsistent with moderate limitations in concentration/attention, persistence, and pace/fatigue.

Rather, the ALJ's limitation to "simple or detailed work" (excluding "complex tasks") is *consistent* with both Dr. Roth's opinion that despite McBride's moderate difficulties in sustaining CPP she could perform simple and detailed tasks *and* the other evidence of record. Tr. 507 (opining McBride's ADLs demonstrated she was able "to understand,

---

[6] While ALJs must meaningfully address their Psychiatric Review Technique (PRT) findings on CPP in their findings and conclusions, they are not required to explicitly include them in the RFC assessment. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011).

9

remember and carry out simple directions with adequate concentration and pace") & 509-10 (opining she had no significant limitations in following simple and detailed instructions); *see Richter v. Comm'r of Soc. Sec.*, 379 F. App'x 959 (11th Cir. 2010) (while ability to remember, understand, and carry out simple instructions differs from limitations related to CPP, where a physician opines that a plaintiff can do so *despite* those limitations, no error in failing to explicitly include them in the RFC assessment).

Moreover, the ALJ more than adequately addressed any failure to explicitly enunciate plaintiff's mild-to-moderate CPP limitations in the RFC assessment by explicitly including them in the hypothetical posed to the VE. Tr. 59 (asking the VE to consider a worker "mildly limited due to pain on sustained concentration, thus best suited for either simple or detailed work"); *id.* at 59-60 (such a person could perform plaintiff's past work) & 63 (as well as other work); *Winschel*, 631 F.3d at 1181 (ALJ adequately addresses CPP limitations by either "indicat[ing] that medical evidence suggested [plaintiff]'s ability to work was unaffected by this limitation," or by (either implicitly or explicitly) "includ[ing] the limitation in his hypothetical question to the [VE]."). The ALJ did not

10

err in his assessment of Dr. Roth's opinion.

## 2. Nurse Practitioner Franko

Plaintiff contends the ALJ also failed to properly weigh the mental health questionnaire completed by Nurse Practitioner Patricia Franko and countersigned by Dr. Saleem Sayyar. Doc. 18 at 12-25. The ALJ accorded "little weight" to NP Franco's opinion that plaintiff had marked limitations in getting along with others and dealing with changes in the workplace setting because (1) she was not an acceptable treating source, (2) the assessment was primarily based on plaintiff's own discredited subjective testimony, and (3) the opinion was inconsistent with the overall record. Tr. 19-20.

Contrary to plaintiff's contentions, nurse practitioners are not "acceptable medical sources" under the regulations, *see* 20 C.F.R. § 416.913(a) ("acceptable medical sources" include physicians, psychologists, and other medical professionals"), and are thus not considered in the same league as "acceptable medical sources." SSR 06-03p[7]; 20 C.F.R. §§ 404.1513(d) & 416.913(d). Because they are not

---

[7] Social Security Rulings (SSR) "represent precedent final opinions and orders and statements of policy and interpretations that we have adopted." 20 C.F.R. § 402.35(b)(1). SSRs are entitled to deference, but are not binding on the courts.

11

acceptable medical sources, nurses are weighed the same as any other lay witness. *Carter v. Colvin*, 2017 WL 360926 at *1 n. 1 (S.D. Ga. Jan. 3, 2017); *Colon v. Colvin*, 2013 WL 4890312 at *2 (M.D. Fla. Sept. 11, 2013) (quoting *Blodgett v. Comm'r of Social Sec.*, 534 F. App'x 608, 610-11 (9th Cir. 2013) (counselors and nurses are "other sources" within the meaning of the regulations) and *Rusten v. Comm'r of Soc. Sec.*, 468 F. App'x 717, 720 (9th Cir. 2012) ("An ALJ can give less weight to an 'other source' medical opinion by providing reasons germane to each witness for doing so.")). And all that is required of an ALJ regarding non-medical source evidence is that the evidence be considered. *See* 20 C.F.R. §§ 416.926, 416.926a, 416.927, 416.929. There is no requirement that an ALJ give any particular amount of weight to non-medical source evidence. *See id.*

In rejecting lay witness testimony, the ALJ need only provide "arguably germane reasons" for dismissing the testimony, even if she does "not clearly link [her] determination to those reasons." *Carter*, 2017 WL 360926 at *2 (quoting *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) and *Cole v. Comm'r of Soc. Sec.*, 2012 WL 4077233 at *4 (M.D. Fla. Sept. 17,

---

*Fair v. Shalala*, 37 F.3d 1466, 1467 (11th Cir. 1994); *cf. Silveira v. Apfel*, 204 F.3d 1257, 1260 (9th Cir. 2000) ("This court defer[s] to Social Security Rulings . . . unless they are plainly erroneous or inconsistent with the Act or regulations").

2012)). An ALJ may reject lay witness testimony if it is inconsistent with the record. *Id.* (citing *Lewis*, 236 F.3d at 511-12 (rejecting lay witness testimony conflicting with the plaintiff's testimony and the medical record) and *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (rejecting lay witness testimony conflicting with the medical record)).

The ALJ may "draw inferences logically flowing from the evidence." *Carter*, 2017 WL 360926 at *2 (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). Further, "[i]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id.* (quoting *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012)); 20 C.F.R. §§ 404.1529(c)(3), 404.1545(a)(3); *see also* SSR 06-03p (recognizing that "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision"); *Osborri v. Barrihart*, 194 F. App'x 654, 666 (11th Cir. 2006) ("[W]e conclude that the ALJ's specific and explicit credibility determination as to Osborn's testimony sufficiently implies a rejection of Mrs. Osborn's testimony as well.").

Here, the ALJ correctly characterized the mental health

questionnaire as coming from an unacceptable medical source -- the fact that Dr. Sayyer "countersigned" the opinion does not change that NP Franco completed it and the opinions contained therein are her own. A doctor's signature on reports authored by a nurse practitioner do not magically transform them into evidence from an "acceptable medical source" when they are prepared following the *nurse practitioner's* examination of a claimant. 20 C.F.R. § 416.913(a); *see also* 65 Fed. Reg. 34,950, 34,952 (June 1, 2000) (amending regulation to delete ambiguous language permitting "interdisciplinary team reports" completed by an "other source" but bearing a physician's signature from being considered acceptable medical evidence "[b]ecause acceptable medical sources are individuals, it is redundant and somewhat misleading to provide that an interdisciplinary team report containing the evaluation and signature of an acceptable medical source is such a source." The amendment further redefined "acceptable medical sources" more narrowly to include *only* "individuals who have the training and expertise to provide us with the signs and laboratory findings based on medically acceptable clinical and laboratory diagnostic techniques that establish the existence of a medically determinable physical or mental impairment."). And there is

14

no evidence that Dr. Sayyer actually examined plaintiff, as the only examination notes bear NP Franco's signature (*see* tr. 492, 295-96) and plaintiff points to no evidence in the record demonstrating she saw anyone *except* the nurse practitioner. This mental health questionnaire is *not* Dr. Sayyer's opinion -- it is NP Franco's.[8] The ALJ therefore had only to provide germane reasons for discounting the weight given to it.

Inconsistency with the other evidence of record and being predicated on plaintiff's own discredited subjective testimony are germane reasons. Plaintiff's admitted ADLs demonstrate a significant ability to socialize and sustain healthy familial relationship (*e.g.*, tr. 41 & 376 (admitting she attends church and socializes with her extended family regularly)) as well as function in public settings (*id.* (testifying she grocery shops)). These admissions are inconsistent with NP Franco's opinion that she is markedly abnormal in social functioning. Tr. 494. She lives independently and cares for her parents and her adult daughter (tr. 44,

---

[8] The Court recognizes the reality of modern healthcare "in the era of HMOs and other 'managed care' situations is that many people are prevented from actually seeing a physician until an insurance carrier allows them to. Hence, an increasingly large population may be seen initially -- and perhaps on a regular or prolonged basis -- by a nurse-practitioner, a physician's assistant, or, in mental health cases, a therapist, who both treat and screen who ultimately gets to see 'the doctor.'" 2 Soc. Sec. Disab. Claims Prac. & Proc. § 22:51 (2nd ed.). But this does not change the regulations, or the case law, which define nurse practitioners as "other sources" for the purpose of weighing (and discrediting) the opinion evidence.

15

377 & 507), "get[s] along fairly well with others," and has no difficulties adapting to "normal work stressors" (*id.* at 507 & 510). Her ADLs and Dr. Roth's medical opinion simply contradict NP Franco's unsupported opinion that she cannot tolerate changes in the workplace setting. *Id.*

NP Franco's opinion of extremely restricted functioning instead appears to be based upon McBride's own reports, which were properly discredited by the ALJ.[9] And ALJs may properly reject medical source opinions if they appear to be based on a claimant's own, properly discredited subjective complaints. *See, e.g., Richardson v. Colvin*, 2013 WL 1338730 at *5 (S.D. Ga. Mar. 11, 2013) (citing *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)); *Morris v. Barnhart*, 78 F. App'x 820, 825 (3d Cir. 2003) (same). The ALJ provided multiple, germane reasons for rejecting NP Franco's unsupported opinion.

### III. CONCLUSION

Because the ALJ's decision is supported by substantial evidence in the record, the Commissioner's final decision should be **AFFIRMED**.

This report and recommendation (R&R) is submitted to the district

---

[9] McBride does not challenge the ALJ's finding that she was less than fully creditable. *See* doc. 18; *see also Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 n. 1 (11th Cir. 2013) (plaintiffs abandon any challenge to matters not explicitly raised).

judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this __20th__ day of April, 2017.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA